IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

PETER BJERKE,

        Plaintiff,

v.

MESSERLI & KRAMER, P.A.,

        Defendant.[1]

OPINION AND ORDER

16-cv-748-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff Peter Bjerke brought this action against defendants Messerli & Kramer, P.A., Wisconsin CVS Pharmacy, LLC and CVS RX Services, Inc., alleging violations of the federal Fair Debt Collection Practices Act, the Wisconsin Consumer Act and the Wisconsin common law of negligence. Plaintiff has since settled with defendants Wisconsin CVS Pharmacy, LLC and CVS RX Services, Inc., and the court dismissed all claims against the CVS defendants with prejudice on February 27, 2017. Dkts. ##31 and 37. Messerli & Kramer, P.A. is the lone remaining defendant.

Defendant Messerli has filed a motion to dismiss plaintiff's amended complaint for failure to state a claim upon which relief can be granted and for lack of jurisdiction for failure to comply with the FDCPA's one-year statutory limitation period. Dkt. #22. For the

---

[1] Former defendants Wisconsin CVS Pharmacy, LLC and CVS RX Services, Inc. were terminated from the case on February 27, 2017.

1

reasons stated below, I am granting defendant's motion as to plaintiff's claim of negligent supervision and training, as well as defendant's motion to dismiss FDCPA claims based on conduct by defendant Messerli that occurred before November 14, 2015. However, I am denying defendant's motion to dismiss as to all remaining claims under the FDCPA and WCA. I am also denying as premature the motion by plaintiff's counsel, dkt. #35, to appear at the final pretrial conference (scheduled for April 26, 2018) by telephone. This denial is without prejudice to plaintiff's refiling the motion as the case progesses closer to that stage.

The following facts are drawn from plaintiff's amended complaint and documents submitted by the parties that are relevant to deciding defendant's motion to dismiss.

## BACKGROUND FACTS

### A. Allegations of the Amended Complaint

Plaintiff Peter Bjerke owed several thousand dollars of credit card debt to Citibank USA, N.A. that was consigned to Midland Funding, LLC, a creditor client of defendant Messerli & Kramer, P.A. On behalf of its client, defendant Messerli filed an action to recover that unpaid debt in the Circuit Court for Dunn County, Wisconsin on March 18, 2014. On April 2, 2014, defendant Messerli obtained a judgment against plaintiff for its client in the amount of $4,091.20. To collect on that judgment, defendant Messerli issued a garnishment against plaintiff's employer, CVS Caremark, and filed a notice of garnishment with the court on November 10, 2014. Soon after, CVS responded and said that it would garnish plaintiff's earnings. By March 2015, all of the money necessary to satisfy the

judgment had been garnished from plaintiff's CVS paychecks. However, CVS did not transfer the money to either defendant Messerli or defendant's creditor client. As a result, neither received the garnished funds, which remained in CVS's possession.

Defendant Messerli contacted CVS on several occasions to inquire about the garnishment, but received no response. Not knowing the status of the funds, in October 2015, defendant Messerli filed a second notice of garnishment to collect on the original judgment. (It is unclear from the amended complaint whether the action for the second garnishment was initiated on October 12, 16 or 22.) On November 4, 2015, plaintiff filed a response stating that CVS had already garnished his paycheck accounts for the total amount that he owed. Apparently that same day, defendant Messerli attempted to contact CVS again via phone, mail and fax, and stated in a letter to CVS that "[w]e received a Debtor's Answer stating this garnishment was paid thru the prior garnishment on November 4, 2015." Am. Cpt. ¶ 26 , dkt. #15.

Through its employees and agents, defendant Messerli then left the following four messages on plaintiff's cell phone voicemail:

1. On or about, December 14, 2015: "Hi, my name is Nicole from Messerli and Kramer. I'm trying to reach Peter. If you could please return my phone call at 763-548-7746, and please reference your file number 14102645. Again, my name is Nicole from Messerli and Kramer, 763-548-7746. Thank you." . . .

2. On or about, December 23, 2015: "Hi Peter, it's Nicole at Messerli and Kramer. I really need you to call me back regarding the payroll, or else we're going to have to schedule a hearing with a judge, and that's fine. I don't

mind doing that, but I would think that you would prefer not to [inaudible 00:00:41] in court. If she could ... I need to get this money from CVS. If you could please answer my phone call at 763-548-7746. Please reference file number 14-102645. I will be out of the office Thursday and Friday, back on Monday, December 28. Again, please give me a call as soon as possible because we have got to get this money from CVS. If I can't contact you and contact them, I'm going to have a judge get it resolved. Again, 763-548-7746. Thank you. Bye." . . .

3. On or about, January 5, 2016: "Hi Peter, it's Nicole with Messerli and Kramer. I still haven't heard back from you the past 6 weeks. I'm going to have to proceed accordingly. Give me a call back at 763-548-7746, and watch your mail for other information if I don't hear back from you. Thank you." . . .

4. On or about, March 1, 2016: "Hi [Peter], this is Paula at Messerli and Kramer. I'm canceling that hearing tomorrow, but I need you to keep in touch with me because this is not over, and I don't want to have to involve you with going to court again. I want to try to [inaudible 00:00:36], but I need you to keep in touch with me, and we've got to get this resolved. My number is 723-548-7746. Thank you."

Id. ¶ 27. These phone calls and voice messages "harmed Plaintiff by depleting the battery life on his cellular phone, which cost Plaintiff time and expense to recharge, and by using minutes allocated to Plaintiff by his cellular telephone service provider." Id. ¶ 35.

"Eventually," CVS paid the garnished funds to defendant Messerli or its creditor client and the judgment was satisfied, "but not until Plaintiff was forced to unnecessarily spend his time, money, and other limited resources to fix the problem. . . . Messerli knew

4

Plaintiff did not have to pay any more on the debt at issue." Id. ¶ 29. Plaintiff also "expended months of personal time and incurred personal expenses in having to attempt to resolve this matter on his own"; "has been severely agitated, annoyed, traumatized, emotionally damaged and has otherwise been unduly inconvenienced"; and "[u]pon information and belief, as a result of the distress and preoccupation, Plaintiff['s] job performance at work suffered." Id. ¶¶ 39-41.

### B. Proposed Evidence of Additional Phone Conversations

Defendant Messerli has submitted transcripts of five phone conversations involving plaintiff that it says provide critical and necessary context to the voicemail messages described in the amended complaint. Weber Decl., dkt. #21. According to the transcripts, plaintiff initiated the call and spoke to one or more Messerli employees on each occasion. In particular, a transcript of a conversation on November 25, 2015, suggests that plaintiff called defendant's office for the first time on that date, before plaintiff ever received any calls or messages from defendant, and he requested a satisfaction of judgment on his account because his pay had already been garnished for the full amount that he owed. A Messerli employee named Nicole Keifer told plaintiff that she believed that CVS had garnished his pay, but that Messerli had not received any of that money and had been unable to get through to CVS, which remained unresponsive despite numerous attempts at contact. Keifer asked plaintiff whether he knew how to reach CVS, and plaintiff responded, "umm well I can check with them yeah." Dkt. #21-1, at 4. Keifer told plaintiff that she was glad he had

5

called and hoped he could call CVS because she thought "[plaintiff] could get further than we can because it's your money and obviously they should give it to us." Id. Plaintiff agreed to try to call and follow up with CVS, whom they both believed to be at fault. Keifer suggested that plaintiff call her back the following week to let her know whether he had reached CVS. Plaintiff agreed to do so. The transcript suggests that the call ended on a congenial note. Id. at 4-6.

Defendant Messerli says that after it did not hear back from either plaintiff or CVS, Keifer called plaintiff and left him the December 14, 2015 voicemail message described above, and left additional messages on December 23, 2015 and January 5, 2016. Defendant Messerli's transcripts show that plaintiff then called and spoke with Keifer again on February 24 and 26, 2016. They also show that after another Messerli representative left plaintiff a voicemail message on March 1, 2016, plaintiff called back and again spoke with Keifer on March 7 and 11, 2016, shortly before the garnishment issue was finally resolved with CVS.

OPINION

Plaintiff is raising claims under the Fair Debt Collection Practices Act, the Wisconsin Consumer Act and Wisconsin common law. Am. Cpt. ¶¶ 41-77, dkt. #15. Defendant Messerli moves to dismiss each of these claims pursuant to Federal Rule of Civil Procedure 12(b)(6), contending that plaintiff's FDCPA claims are barred by the applicable statute of limitations and that each of his federal and state law claims fails to state a claim upon which relief can be granted.

6

In reviewing defendant's motion to dismiss, I accept all factual allegations in the amended complaint as true and draw all reasonable inferences in plaintiff's favor. Santiago v. Walls, 599 F.3d 749, 756 (7th Cir. 2010). However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotation marks omitted). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Twombly, 550 U.S. at 570). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556).

### A. Statute of Limitations

A statute of limitations typically provides an affirmative defense. As a general rule, a plaintiff is not required to plead facts in his complaint to anticipate and defeat affirmative defenses. Brooks v. Ross, 578 F.3d 574, 579 (7th Cir. 2009). However, "when the allegations of the complaint reveal that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim." Logan v. Wilkins, 644 F.3d 577, 582 (7th Cir. 2011); United States v. Lewis, 411 F.3d 838, 842 (7th Cir. 2005) (motion to dismiss appropriate where "complaint plainly reveals that an action is untimely under the governing statute of limitations").

The FDCPA provides a one-year statute of limitations, 15 U.S.C. § 1692k(d) ("An action to enforce any liability created by this subchapter may be brought . . . within one year from the date on which the violation occurs."). The statute begins to run "upon injury (or, as is standardly the case with federal claims, upon discovery of the injury) and is not tolled by subsequent injuries." Limestone Development Corp. v. Village of Lemont, Illinois, 520 F.3d 797, 801 (7th Cir. 2008); see also Gajewski v. Ocwen Loan Servicing, 650 F. Appx. 283, 286 (7th Cir. 2016). Defendant contends that plaintiff's FDCPA claims should be dismissed because those claims relate to the second action to garnish plaintiff's CVS wages (itself the second attempt to enforce an April 2014 judgment), which plaintiff alleges that Messerli initiated in October 2015. Am. Cpt. ¶¶ 23-26, dkt. #15. This lawsuit was filed more than one year later, on November 14, 2016. Dkt. #1.

In response, plaintiff contends that "[e]ach phone call to the Plaintiff and subsequent legal action related to the unlawful garnishment constitute a continuing violation (2nd garnishment and each phone call)." Plt.'s Opp. Br., at 36, dkt. #32. However, plaintiff's reliance on the so-called "continuing violation" doctrine is misplaced. As the Court of Appeals for the Seventh Circuit has held, that doctrine is something of a misnomer; its purpose "is to allow suit to be delayed until a series of wrongful acts blossoms into an injury on which suit can be brought. It is thus a doctrine not about a continuing, but about a cumulative, violation." Limestone Development Corp, 520 F.3d at 801 (internal citation omitted). The continuing violation doctrine does not apply to "a series of discrete acts, each of which is independently actionable, even if those acts form an overall pattern of

8

wrongdoing." Kovacs v. United States, 614 F.3d 666, 676 (7th Cir. 2010) (quoting Rodrigue v. Olin Employees Credit Union, 406 F.3d 434, 443 (7th Cir. 2005)). Thus the conclusion of the court of appeals in Gajewski that even if "collection activity within or related to pending litigation may lead to new, and separately prosecutable, violations of the FDCPA," that does *not* mean that "new violations will resurrect prior, untimely claims based on a 'continuing violation' theory." Gajewski, 650 F. Appx. at 286-87 (citing Bentrud v. Bowman, Heintz, Boscia & Vician, P.C., 794 F.3d 871, 872–76 (7th Cir. 2015); Kovacs, 614 F.3d at 676; Limestone Development Corp, 520 F.3d at 801).

Plaintiff cites one district court decision holding that an FDCPA claim premised upon collection activities during the course of a related lawsuit constituted a "continuing wrong that was not completed" until dismissal of the lawsuit. Hoang v. Worldwide Asset Purchasing, LLC, No. 09-185-DRH, 2009 WL 3669883, at *2 (S.D. Ill. Nov. 2, 2009). However, Hoang seems to be an outlier that does not conform to more recent circuit law. Gajewski, 650 F. Appx. at 286-87; Kovacs, 614 F.3d at 675-76 (continuing violation theory inapplicable to unlawful reoccurring tax collection efforts by IRS); see also Billups v. Deutsche Bank, No. 15-CV-3165, 2016 WL 3633320, at *3 (N.D. Ill. July 6, 2016) (continuing efforts to prosecute untimely foreclosure action not sufficient to toll or restart statute of limitations under FDCPA); Frazier v. U.S. Bank National Association, No. 11 C 8775, 2013 WL 1337263, at *6-7 (N.D. Ill. Mar. 29, 2013) (initial untimely violation of FDCPA could not be revived because continuing violation doctrine did not apply to lingering

9

injurious effects of initial violation or to subsequent series of discrete, individually actionable violations).

Plaintiff also cites this court's decision in Beal v. Wyndham Vacation Resorts, Inc., 956 F. Supp. 2d 962 (W.D. Wis. 2013) to support his argument, but the case is inapplicable for two reasons. First, it applied a continuing violation theory not to FDCPA claims, or indeed to any federal claims, but to invasion of privacy and private nuisance claims governed by Wisconsin state law. Id. at 972-75. Second, in Beal, the defendant allegedly made a hundred or more harassing phone calls, and plaintiff simply sought to include all of the debt collection calls in her claim, even if the first few were untimely. Id. at 974 ("Although the first few calls or last few calls may not be actionable on their own, plaintiff's claims are premised specifically on the repetition of the calls. She is not alleging that any discrete call was a nuisance or invasion of her privacy; rather, it is the quantity and continuing nature of the calls that provide the basis for plaintiff's claims."). See also Heffron v. Green Tree Servicing, LLC, No. 15-CV-0996, 2016 WL 47915, at *3 (N.D. Ill. Jan. 5, 2016) (applying continuing violation doctrine to series of phone calls that did not constitute individual violations, but added up to cumulative violation of FDCPA provision barring repeated or continuous phone communication with intent to harass).

Here, by contrast, plaintiff alleges four timely phone calls as the basis for bringing in all claims related to the second garnishment action that would otherwise by time-barred because they are premised on conduct that occurred more than a year before the filing of this lawsuit. This is not a proper application of the continuing violation doctrine. Accordingly,

all of plaintiff's FDCPA claims premised on the first or second garnishment actions themselves, or any conduct that occurred before November 14, 2015, will be dismissed as time-barred. Any valid FDCPA claim must be based on allegations of communications or other actions that occurred on or after that date.

B. Federal and State Law Claims

Having determined that plaintiff's FDCPA claims are time-barred as to conduct before November 14, 2015, I now turn to defendant Messerli's arguments that plaintiff's remaining FDCPA and state law claims fail to state a claim. As a preliminary matter, defendant asserts that the court can and should consider the phone call transcripts defendant submitted with its motion to dismiss. I disagree.

As a general matter, in reviewing a motion to dismiss under Rule 12(b)(6), the court must look only to the allegations in the complaint, and if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). As defendant's cited authorities suggest, the court may consider any documents that are attached to the complaint. In certain circumstances, the court may also look to documents that are referred to in the complaint, especially when they are integral to the pleadings or central to the claim and matters of public record or otherwise undisputedly authentic. Dft.'s Br., at 12-16 (collecting cases), dkt. #20. However, these are narrow exceptions to the general rule, Tierney v. Vahle, 304

F.3d 734, 738 (7th Cir. 2002), and defendant's transcripts fall into none of the relevant categories.

Defendant's transcripts may be relevant to plaintiff's claims, but they were not included in, attached to or even mentioned in the amended complaint. Plaintiff's amended complaint included allegations about the four voicemail messages only; it made no reference to any other phone calls. Given this, defendant's "perfunctory arguments for the centrality of these documents are unpersuasive." Levenstein v. Salafsky, 164 F.3d 345, 347 (7th Cir. 1998). The transcripts may well provide essential context for understanding and evaluating plaintiff's claims, but the place for doing that is in a motion for summary judgment. Indeed, "the purpose of requiring conversion from Rule 12(b) or Rule 12© to Rule 56, if matters outside the pleadings are considered by the court, is to make sure that each party has notice of evidence that the opposing party wants to present in support of his claim or defense." Tierney, 304 F.3d at 738. The transcripts at issue were prepared by defendant Messerli, so plaintiff may not have seen them before receiving defendant's motion to dismiss. Additionally, plaintiff may not have sufficient notice to evaluate their authenticity or to request additional related documents from defendant. That is what discovery is for. Rather than converting this motion to one for summary judgment, I will exclude these documents from consideration of defendant's motion to dismiss.

1. FDCPA claims

The Fair Debt Collection Practices Act generally prohibits "debt collectors" from engaging in abusive, deceptive or unfair debt-collection practices." 15 U.S.C. §§ 1692-92p. Among other things, the Act places restrictions on times at which a debt collector may contact a debtor about his debt and regulates when, where and how it may do so (§ 1692c); prohibits the use of harassing, oppressive or abusive measures to collect a debt (§ 1692d); and bans the use of false, deceptive, misleading, unfair or unconscionable means of collecting a debt (§§ 1692e, 1692f). Gburek v. Litton Loan Servicing LP, 614 F.3d 380, 384 (7th Cir. 2010). Defendant Messerli does not deny that it qualifies as a "debt collector" under the statute.

Plaintiff contends primarily that defendant Messerli's phone calls and communications in trying to collect on the second garnishment violated §§ 1692d, 1692e and 1692f. Defendant denies this contention, saying that these communications were not "in connection with the collection of any debt," Gburek, 614 F.3d at 384, were not harassing or abusive, included no false, deceptive or misleading statements and, to the extent there was any technical violation of the FCDPA, they was immaterial. Some of these arguments may have merit, although plaintiff need show only that a statement would confuse or mislead an "unsophisticated consumer." Lox v. CDA, Ltd., 689 F.3d 818, 822 (7th Cir. 2012); Wahl v. Midland Credit Management. Inc., 556 F.3d 643, 645-46 (7th Cir. 2009). The difficulty for defendant, however, is that its approach relies heavily on the transcripts of the additional phone conversations, which I cannot consider without converting its motion into one for summary judgment.

13

Defendant emphasizes the context of the phone calls, arguing that they could not have amounted to violations of 15 U.S.C. §§ 1692d, 1692e or 1692f under these circumstances. However, without the additional documents it is relying on, defendant cannot prevail on this argument. Plaintiff has done the bare minimum necessary to state a claim under the FDCPA at this stage. Accordingly, defendant's motion to dismiss the FDCPA claims premised on communications made after November 14, 2015, must be denied.

2. WCA claims

Plaintiff brings similar claims under Chapter 427 (Debt Collection Practices) of the Wisconsin Consumer Act, Wis. Stat. § 427.104. Specifically, he alleges that defendant Messerli violated §§ 427.104(g) ("Communicate with the customer or a person related to the customer with such frequency or at such unusual hours or in such a manner as can reasonably be expected to threaten or harass the customer"); (h) ("Engage in other conduct which can reasonably be expected to threaten or harass the customer or a person related to the customer"); (j) ("Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist"); and (L) ("Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt"). Defendant's arguments in support of its motion to dismiss these claims are repetitive and derivative of his FDCPA arguments. Although I am skeptical that defendant Messerli's phone calls could reasonably be interpreted as threatening or harassing, defendant's reliance on the call transcripts makes it impossible to fully consider its arguments without converting the

14

motion into one for summary judgment. Thus, for the same reasons, defendant's motion to dismiss the WCA claims is denied.

3. Negligent supervision claim

Finally, defendant Messerli seeks to dismiss plaintiff's claim that it was "negligent in the training and/or supervision of some unknown employee(s) in an attempt to collect a debt." Am. Cpt. ¶ 61, dkt. #15. To state such a claim under Wisconsin law, "plaintiff must show that the employer has a duty of care, that the employer breached that duty, that the act or omission of the employee was a cause-in-fact of the plaintiff's injury and that the act or omission of the employer was a cause-in-fact of the wrongful act of the employee." Doe v. Archdiocese of Milwaukee, 2005 WI 123, ¶¶ 43-44, 284 Wis. 2d 307, 332-33, 700 N.W.2d 180, 192; Miller v. Wal-Mart Stores, Inc., 219 Wis. 2d 250, 262, 267-68 580 N.W.2d 233, 238-39, 241 (1998) ("The act of the employee, whether intentional or unintentional, must be causal to the injury sustained. But equally important, the negligence of the employer must be connected to the act of the employee.").

This claim has several problems. First, it is far from clear that defendant Messerli owed plaintiff any duty of care under Wisconsin law. Plaintiff includes no allegations that suggest such a duty. Even if there were such a duty, and one or more Messerli employee acted negligently (which is only vaguely alleged), the amended complaint contains no allegations about Messerli's training or supervision of its employees that would allow a trier of fact to plausibly infer negligence on defendant's part. The question is not whether the employer's

15

alleged conduct presents a "bare possibility" of injury caused by one of its employees, but whether it presents a "foreseeable likelihood of injury needed to find negligence." Kolbe & Kolbe Millwork, Co. v. Manson Insurance Agency, Inc., 983 F. Supp. 2d 1035, 1048 (W.D. Wis. 2013) (citing Behrendt v. Gulf Underwriters Insurance Co., 2009 WI 71, ¶ 52, 318 Wis. 2d 622, 649, 768 N.W.2d 568, 581)).

Because plaintiff does not allege that any act or omission by Messerli caused any of its employees to injure plaintiff, or that such act or omission violated Messerli's duty of care, I am dismissing plaintiff's claim for negligent supervision or training.

ORDER

IT IS ORDERED that

1. The motion to dismiss filed by defendant Messerli & Kramer, P.A., dkt. #22, is GRANTED in part and DENIED in part, as follows:

    a. Plaintiff Peter Bjerke's claim for negligent supervision or training is DISMISSED.

    b. Plaintiff's claim for violations of the Fair Debt Collection Practices Act premised on conduct that occurred before November 14, 2015, is DISMISSED as time-barred.

    c. Defendant's motion to dismiss is DENIED as to plaintiff's WCA claims and FDCPA claims premised on conducted that occurred on or after November 14, 2015, and plaintiff may proceed with those claims.

2. The discovery stay that the court imposed pending resolution of the statute of limitations issue, dkt. #45, is hereby lifted.

3. Plaintiff's motion to appear at the April 26, 2018 final pretrial conference by telephone, dkt. #35, is denied without prejudice as premature.

Entered this 5th day of July, 2017.

BY THE COURT:

/s/
_____
BARBARA B. CRABB
District Judge